# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| **A.K.,** a minor, by and through **KELLEY MOYER** | : : | |
| Plaintiff | : : | |
| v. | : : | Civil Action No. – 1:20-cv-00329 |
| **CHERRY CREEK SCHOOL DISTRICT NO. 5** | : : : | |
| **ENDEAVOR ACADEMY,** | : : | |
| **CAROLL DURAN**, in her official capacity as Principal of Endeavor Academy | : : : : | Complaint – Civil Rights |
| Defendants | : : | |

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, OR OTHER RELIEF**

Plaintiff, A.K., by and through Kelley Moyer ("Moyer"), as her next friend, through her undersigned counsel, for her Complaint and Jury Demand against Defendants Cherry Creek School District No. 5 ("CCSD"), Endeavor Academy, and Caroll Duran ("Principal Duran") (collectively "Defendants") alleges as follows:

## NATURE OF ACTION

1. This is a challenge to Defendants' policies, practices, and customs that unconstitutionally infringed and continue to infringe on the fundamental, individual First and Fourteenth Amendment rights of Plaintiff. Plaintiff was suspended from school for five days solely because she posted a picture of herself

1

and her older brother holding firearms. The photo was captioned with an explanation that they were heading to the gun range to exercise their Second Amendment rights and thought they would exercise their First Amendment rights while they were at it – unquestionably some the very types of speech that the First and Fourteenth Amendment protects from government infringement and punishment. Further, Defendants threatened "additional consequences" if Plaintiff engages in similar constitutionally protected political speech in the future., Plaintiff's non-threatening political speech was published off campus, after school hours, online, and was not in any way directed at students, school officials, or school activities. Defendants' policies, practices, actions, errors, and omissions target for censorship and punishment Plaintiff's constitutionally protected speech and expression.

## PARTIES

2.     Plaintiff A.K. is a seventeen-year-old high school senior at Endeavor Academy in Centennial, Colorado. She is represented by her mother and sole legal guardian, Kelley Moyer, as her next friend pursuant to F.R.C.P. 17(c)(2).

3.     Defendant Cherry Creek School District No. 5 is a public entity established and organized under, and pursuant to, the laws of Colorado. CCSD maintains its administrative office at 4700 South Yosemite Street, Greenwood Village, Colorado 80111.

4. Defendant Endeavor Academy is a school operated by and located within the Cherry Creek School District No. 5. Endeavor Academy's campus is located at 14076 E. Briarwood Avenue, Centennial, Colorado 80112.

5. Defendant Caroll Duran is the principal of Endeavor Academy. Pursuant to a delegation of authority by CCSD, Principal Duran is responsible for implementing and enforcing CCSD's and Endeavor's policies, including the suspension policy at issue in this action. Duran is sued in her official capacity.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff seeks to vindicate her rights under the First Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b), because the events that give rise to Plaintiff's claims occurred in this district.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Prior Snapchat Activities

8. Plaintiff utilizes the popular social media application "Snapchat," a multimedia messaging application.

9. Snapchat allows users, *inter alia*, to post images that can be directed to select contacts, a semi-public story, or a public story that can be viewed by anyone using the application.

10. In the mid-morning hours of October 10, 2019, Plaintiff posted a picture of herself with a black scarf which she wrapped around her head. The photo lacked any caption and was not directed at anyone in particular.

11. Several of Plaintiff's volleyball teammates messaged her through the application to let her know that they believed the photo was racist. As a result, Plaintiff removed the photo.

12. Plaintiff then reposted the photo with a caption "Allahu akbar (I live in America so fuck you if your [sic] offended, I can do what I want."

13. Plaintiff received more complaints from teammates with threats that they would report her to the school administration for the post.

14. As a result of the complaints, Plaintiff went to the principal's office on her own accord and "self-reported" the material she posted on Snapchat in an effort to make the school administration aware.

15. At the time Plaintiff "self-reported" the material, Principal Duran did not reprimand Plaintiff for, or express a concern regarding, the post.

16. Later that day, Plaintiff was called back to Principal Duran's office as a result of individuals notifying her of the post, even though Plaintiff had previously "self-reported" what she posted.

17. During this second meeting, Principal Duran advised Plaintiff that she could not be punished for the post. Principal Duran further advised Plaintiff to be "more sensitive" about her social media posting.

### B. Plaintiff Engaged in Protected Speech Out of School

18. On the evening of October 10, 2019, Plaintiff and her older brother planned to go to the Centennial Gun Club's shooting range to practice marksmanship and firearm safety.

19. Plaintiff and her family are firearm enthusiasts, strong supporters of the First and Second Amendments, and encourage family members to regularly practice to maintain firearm proficiency.

20. Plaintiff and her family practice what they preach by routinely and lawfully practicing marksmanship and firearm safety, including by training at the Centennial Gun Club's indoor shooting range in Centennial, Colorado. Plaintiff and Moyer are also members of the Firearms Policy Coalition, Inc. (FPC) and Firearms Policy Foundation (FPF), which are nonpartisan, nonprofit organizations that advocate for individual liberties and constitutional rights, including those protected by the First and Second Amendments.

21. Before leaving for the shooting range, at approximately 7 p.m. on Thursday, October 10, 2019, Plaintiff posted a photo with a caption (the "Snapchat Post") to her social-media account on Snapchat.

22. The Snapchat Post is depicted below:



23.     The Snapchat Post depicts Plaintiff and her older brother, an Army veteran, wearing shemaghs (scarves popular in Middle Eastern countries and also used for practical reasons by members of the United States military, including Plaintiff's older brother). While the attire is atypical of what one may find in a Colorado suburb, there was no suggestion that the shemaghs were or implied a threat to anyone. It also shows them giving the middle-finger gesture while holding

6

firearms. Plaintiff is the figure on the left holding a semiautomatic pistol. The figure on the right is Plaintiff's brother holding a semiautomatic rifle.

24. When the photo was taken, Plaintiff was on real property under the control of Moyer, and had Moyer's permission to hold the handgun, as well as to go to the shooting range with her brother.

25. The Snapchat Post's caption reads, in its entirety:

> me and my legal guardian are going to the gun range to practice gun safety and responsible gun ownership while getting better so we can protect ourselves while also using the first amendment to practice our second ammendment [sic].

26. The Snapchat Post's caption is explicitly political in that it notes that Plaintiff was exercising her free speech rights protected by the First Amendment to display her pride in safely and responsibly exercising her gun-ownership rights protected by the Second Amendment.

27. The Snapchat Post is self-evidently *not* an express or implied threat against anybody, let alone against Endeavor Academy, its students or staff, or its operations or activities.

28. Nothing about the image itself, or its caption, constitutes or promotes illegal activity.

29. Nor does anything in the Snapchat Post depict *dangerous* activity. Indeed, Plaintiff and her brother both display responsible firearm safety practices in the Snapchat Post. For example, both Plaintiff and her brother are exercising

7

"trigger discipline," which is a widely recognized firearm-safety practice whereby a shooter keeps his or her index finger outside of a firearm's trigger well until ready to shoot.

30. The Snapchat Post was posted to Plaintiff's Snapchat account, well outside of school hours, from the privacy of Plaintiff's home. Many of Plaintiff's family and friends follow her on Snapchat. While some of her schoolmates also follow her, the post was not specifically directed at them and did not in any way mention or focus upon the school, her classmates, or anything that would differentiate it from general, publicly directed free speech.

31. The Snapchat Post was neither explicitly nor implicitly directed at a school activity.

### C. Endeavor Academy Irrationally Reacted to Plaintiff's Exercise of Her First Amendment Rights.

32. The Snapchat Post was temporarily visible to certain Endeavor Academy classmates of Plaintiff's through their own private Snapchat accounts.

33. The same evening the Snapchat Post was published—October 10, 2019—two of Plaintiff's classmates took screenshots of the Snapchat Post from their private accounts using the Snapchat application on their own smartphones.

34. On information and belief, a parent of one of Plaintiff's classmates made a report to Safe2Tell Colorado about the Snapchat Post shortly after it was published. Safe2Tell is a program that allows individuals to make anonymous tips

about their purported "concerns" for their safety or the safety of others connected with Colorado schools and communities.

35.     Approximately two hours after the Snapchat Post was published, at around 9 p.m. on October 10, officers from the Aurora Police Department went to Plaintiff's father's house in response to a report about the Snapchat Post.

36.     When the Aurora police officers eventually got in contact with Plaintiff's father, they were apologetic about contacting him at all. The officers told Plaintiff's father that that there was plainly no threat by Plaintiff for them to "assess" for law enforcement purposes.

37.     The next morning, Plaintiff's mother Moyer—desperate to understand why the police had been called on her daughter—accompanied Plaintiff to school. Plaintiff's stepfather also accompanied Plaintiff and Moyer.

38.     Immediately upon arriving at Endeavor Academy on the morning of October 11, 2019, Plaintiff, Moyer, and Plaintiff's stepfather were met by multiple security officers who escorted them to the office of the Endeavor Academy principal, Caroll Duran.

39.     In Principal Duran's office, Plaintiff and her family were met by Principal Duran and Assistant Principal Matt Larson. During the meeting, an Arapahoe County Sheriff's Deputy stood by the door observing the interaction.

40.     Principal Duran opened the meeting by saying that she assumed Moyer was there because of the "incident" with the Snapchat post.

41.     Principal Duran and Assistant Principal Larson then informed Plaintiff and her family that she was being suspended for five days as a result of the post.

42.     In response to Moyer's queries why Plaintiff was being suspended, Principal Duran said, "When we see pictures of a 17-year-old holding an assault rifle, it sends panic through our building."

43.     Principal Duran and Assistant Principal Larson both agreed that Plaintiff had not threatened anybody in the Snapchat Post or otherwise.

44.     Neither Principal Duran nor Assistant Principal Larson could identify a specific school policy that Plaintiff had violated, whether by publishing the Snapchat Post or otherwise.

45.     When Moyer asked Principal Duran why Plaintiff had been suspended, Principal Duran responded that it was because she was holding a gun.

46.     Moyer replied that it was very clear from the caption itself that Plaintiff was going to a shooting range. In response, Principal Duran stated only that that it did not matter.

47.     All discussion during the meeting on the morning of October 11, 2019, was limited to the Snapchat Post at issue in this lawsuit. There was no mention whatsoever of any other social media posts, or other speech or conduct by Plaintiff.

48.     Later that same day, Endeavor Academy emailed Moyer a "follow-up" letter from Principal Duran. A true and correct copy of that letter (hereinafter, the "Oct. 11 Letter") is attached hereto as Exhibit A.

49.     In the Oct. 11 Letter, Principal Duran identified the purported basis for Plaintiff's suspension as "detrimental behavior" pursuant to CCSD Policy No. JKD-1-E ("Grounds for Suspension, Expulsion or Denial of Admission"), CCSD Policy No. JICDA ("Conduct and Discipline Code"), and C.R.S. § 22-33-106. The letter then seems to quote subsection 19 of CCSD Policy No. JICDA:

> *"Behavior on or off school property which is detrimental to the welfare, safety, or morals of other students or school personnel."*

True and correct copies of CCSD Policy Nos. JICDA and JKD-1-E (eff. July 1, 2019) are attached hereto as Exhibit B.

50.     The Oct. 11 Letter failed to explain *how or why* Plaintiff's Snapchat Post—or, for that matter, any other speech or conduct by Plaintiff—was purportedly detrimental to the "welfare, safety, or morals" of Endeavor Academy students or staff. Indeed, neither Principal Duran nor other school officials have ever provided Plaintiff or her family with any such explanation.

51.     The Oct. 11 Letter also did not assert that the Snapchat Post had somehow resulted in a substantial disruption to Endeavor Academy school activities. Nor did the letter claim to forecast any such substantial disruption.

11

52. Notably, the Oct. 11 Letter also threatened additional punishment against Plaintiff for further exercise of her freedom of speech. Specifically, the letter stated, "[A]ny further incidents *will* result in additional consequences being taken by Endeavor Academy." Oct. 11 Letter., Ex. A (emphasis added).

53. Plaintiff served the first day of the five-day suspension on October 11, 2019, and the others on October 21 through October 24, 2019.

54. Upon Plaintiff's return to school, she was segregated during recreational time for a period of approximately three hours in the afternoon, wherein she was placed in a room unsupervised and required to remain in the room until the school day was over. This segregation was purportedly for Plaintiff's safety, in response to threats made against her, but on information and belief, no student threatening her was disciplined as harshly as Plaintiff was for her non-threatening off-campus speech. Further, Plaintiff's *unsupervised* segregation was a useless security measure, having only a punitive, rather than protective, effect.

### D. Defendants' Suspension of Plaintiff—and Threat of "Additional Consequences" for Future Political Speech by Plaintiff—Unlawfully Infringes Plaintiff's First Amendment Rights.

55. Outside of the public school context, Plaintiff's free-speech rights under the First Amendment are coextensive with the rights of adults in other settings. *See, e.g., Morse v. Frederick*, 551 U.S. 393, 405 (2007) ("Had Fraser delivered the same speech in a public forum *outside the school context*, it would have been protected.") (emphasis added); *J.S. ex rel. Snyder v. Blue Mountain School Dist.*, 650

F.3d 915 (3d Cir. 2011) ("[A] student's free speech rights outside the school context are coextensive with the rights of an adult."); *Thomas v. Bd. Of Educ., Granville Cent. Sch. Dist.*, 607 F.2d 1043, 1050 (2d Cir. 1979) ("[B]ecause school officials have ventured out of the school yard and into the general community where the freedom accorded expression is at its zenith, their actions must be evaluated by the principles that bind government officials in the public arena.").

56.     Here, the Snapchat Post was created after school hours and off campus. Nothing about its content was directed toward campus or toward a school activity.

57.     In short, there was and is no constitutional basis for Defendants to punish and restrict Plaintiff's speech, which occurred entirely outside "the special characteristics of the school environment." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). Defendants' punishment and threats of future punishment, under color of Colorado law, violate Plaintiff's free speech rights under the First Amendment.

58.     Even if Defendants had limited constitutional authority to restrict Plaintiff's out-of-school speech—and they do not—they nevertheless failed to satisfy the standard for restricting public school student speech set forth in *Tinker*.

59.     For half a century, it has been the "unmistakable holding" of the Supreme Court that students do not "shed their constitutional rights to freedom of speech or expression at the school house gate." *Tinker*, 393 U.S. at 506. Instead,

"student expression may not be suppressed unless school officials reasonably conclude" that the expression "will materially and substantially disrupt the work and discipline of the school." *Morse*, 551 U.S. at 403 (citing *Tinker*, 393 U.S. at 513).

60. Of special relevance here, "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression" in public schools. *Tinker*, 393 U.S. at 509.

61. But here, Defendants had nothing *but* an "undifferentiated fear" as their basis for restricting Plaintiff's freedom of expression. The Oct. 11 Letter did not explain how or why the Snapchat Post was purportedly "detrimental," let alone articulate whether or why Defendants believed that the Snapchat Post had caused a "substantial disruption" or could be forecast to create a "substantial disruption" with Endeavor Academy's school activities. *See Tinker*, 393 U.S. at 514.

62. Instead, Defendants' analysis—or lack thereof—can be gleaned solely from Principal Duran's remarks to Plaintiff and her family on the morning of October 11, 2019, by which point Defendants had already made their decision to suspend Plaintiff for five days.

63. Despite Moyer's repeated demands that Principal Duran articulate the basis for Plaintiff's suspension, Principal Duran would only state that Plaintiff was suspended because pictures of a 17-year-old holding an assault rifle sends panic through the building, and because Plaintiff was holding a gun. Principal Duran's remarks justifying the suspension are the *epitome* of an "undifferentiated fear" of

14

disturbance that our constitutional case law expressly prohibits as a basis to restrict student speech.

64. Accordingly, even if the *Tinker* standard for restricting Plaintiff's out-of-school speech applied here—and it does not—Defendants' suspension of Plaintiff nevertheless violated her First Amendment free speech rights.

65. Moreover, the CCSD policies pursuant to which Defendants punished Plaintiff are both unconstitutionally vague and overbroad.

66. The policies' vague and undefined references to behavior that is "detrimental" to "welfare, safety, or morals" makes it impossible for an ordinary person, such as Plaintiff, to understand what speech is prohibited. Moreover, the vague wording of the CCSD policies encourages arbitrary and discriminatory enforcement.

67. The CCSD policies are also unconstitutionally overbroad in that a substantial number of their potential applications to student punishment are unconstitutional. That overbreadth is particularly apparent here, where Defendants punished Plaintiff for speech and expressive conduct that was expressly about "using the first amendment to practice our second ammendment. [sic]"

## CLAIMS FOR RELIEF

### First Claim for Relief
(Violation of 42 U.S.C. § 1983—Infringement on Freedom of Speech under the First and Fourteenth Amendments)

68. Plaintiff hereby incorporates by reference the allegations set forth above as though fully set forth herein.

69. Defendants, acting under color of state law, have acted to deprive Plaintiff of rights guaranteed by the First Amendment, as incorporated against the States by the Fourteenth Amendment, to the United States Constitution.

70. As a direct and proximate result of Defendants' violation of the First and Fourteenth Amendments, Plaintiff has suffered irreparable harm, including the loss of her constitutional rights, the chilling of future protected expression, loss of five instructional days of schooling, and further retaliatory and punitive conduct by school authorities, entitling her to declaratory and injunctive relief and to actual, punitive, and nominal damages.

71. Defendants' deprivation of AK's First and Fourteenth Amendment rights, and the retaliatory suspension and isolation from her normal school duties, constitute a malicious, wanton and callous indifference for her constitutionally protected rights.

72. AK has, continues to, and will suffer personal humiliation, mental anguish and suffering, and impairment of her reputation.

## Second Claim for Relief
(Violation of 42 U.S.C. § 1983—Void for Vagueness and Denial of Due Process under the First and Fourteenth Amendments)

73. Plaintiff hereby incorporates by reference the allegations set forth above as though fully set forth herein.

74. CCSD Policy Nos. JICDA and JKD-1-E are unconstitutionally void for vagueness under the First and Fourteenth Amendments.

75. CCSD Policy Nos. JICDA and JKD-1-E are unconstitutionally overbroad, both facially and as applied to Plaintiff here, pursuant to the First and Fourteenth Amendments.

76. By enacting and enforcing these CCSD policies, Defendants, acting under color of state law, have acted to deprive Plaintiff of rights guaranteed by the First and Fourteenth Amendments to the United States Constitution.

77. By providing Plaintiff no pre-deprivation opportunity to address the charges against her and using decisionmakers that had already made up their minds that Plaintiff was to be suspended, Defendants also violated Plaintiff's right to due process, which takes on a heightened importance in the context of deprivations of liberty expressly protected by the First and Fourteenth Amendments.

78. As a direct and proximate result of Defendants' violation of the First and Fourteenth Amendments, Plaintiff has suffered irreparable harm, including the loss of her constitutional rights, the chilling of future protected expression, loss of

17

five instructional days of schooling, and further retaliatory and punitive conduct by school authorities, entitling her to declaratory and injunctive relief and to actual, punitive, and nominal damages.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

(a)     Plaintiff requests that the Court enter a declaratory judgment stating that Defendants have violated the First and Fourteenth Amendments to the United States Constitution.

(b)     Plaintiff requests that the Court enter a declaratory judgment stating that Cherry Creek School District policies and practices enforced against Plaintiff, namely, nos. JICDA and JKD-1-E, are unconstitutional on their face and as applied to Plaintiff, pursuant to the First and Fourteenth Amendments to the United States Constitution.

(c)     Plaintiff requests that the Court enjoin Defendants from enforcing their policies and practices inconsistent with the First and Fourteenth Amendments, including an order providing that A.K. is permitted to post online, out-of-school images and statements, not directed at school activities, relating to firearms.

(d) Plaintiff requests that the Court enjoin Defendants from releasing records which indicate Plaintiff was suspended due to the Defendants' unconstitutional policies and practices.

(e) Plaintiff requests that the Court order Defendants to rescind all disciplinary action taken against her as a result of her constitutionally protected speech.

(f) Plaintiff requests that the Court order Defendants to remove any reference to a suspension from her record which resulted from her constitutionally protected speech.

(g) Plaintiff requests an award of nominal damages against Defendants, pursuant to 42 U.S.C. § 1983 and any other applicable law, for violating her constitutional rights.

(h) Plaintiff requests an award of compensatory damages, pursuant to 42 U.S.C. § 1983 and any other applicable law, for violating her constitutional rights.

(i) Plaintiff requests an award of punitive damages against Defendants pursuant to 42 U.S.C. § 1983 and any other applicable law, for violating her constitutional rights.

(j) Plaintiff requests costs of suit, including reasonable attorney fees pursuant to 42 U.S.C. § 1988 and any other applicable law.

(k) Plaintiff requests such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

Dated this 14th day of February, 2020.

                                              Respectfully Submitted,

                                              Adam Kraut, Esq.
                                              Firearms Policy Coalition
                                              1215 K Street, 17th Floor
                                              Sacramento, CA 95814
                                              P: (916) 476-2342
                                              E: akraut@fpclaw.org

                                              Joseph Greenlee, Esq.
                                              Firearms Policy Coalition
                                              1215 K Street, 17th Floor
                                              Sacramento, CA 95814
                                              P: (916) 378-5785
                                              E: jgreenlee@fpclaw.org

                                              *Attorneys for Plaintiff*