**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| **A.K.,** a minor, by and through **KELLEY MOYER** | : : | |
| Plaintiff | : : | |
| v. | : : | Civil Action No. – 1:20-cv-00392 |
| **CHERRY CREEK SCHOOL DISTRICT NO. 5,** *et al.* | : : : | |
| Defendants | : : | |

**Reply to Defendants' Response to Plaintiff's Motion for Temporary Restraining Order**

Minor plaintiff A.K., by and through her counsel and her next friend Kelly Moyer ("Plaintiff"), hereby submits this reply to Defendants' response to her motion for a temporary restraining order and a preliminary injunction.

Defendants make much of what they characterize as a tellingly delay in Plaintiff's seeking of preliminary injunctive relief. Def. Resp. to TRO Motion ("Resp.") at 1 ("If A.K. truly faced an immediate and irreparable injury to her constitutional rights or college prospects, she would have acted sooner."); *id.* at 4 ("Such extensive delay belies any argument of immediate harm, let alone any genuine need for a temporary restraining order.") They even go so far as to suggest that Plaintiff's counsel are squandering time and resources. *Id.* at 10 ("A.K.'s counsel would be wise to withdraw her unsupported request before further costs and fees are incurred.")

1

What Defendants do not mention is that Plaintiff's counsel have several good faith efforts over the last several weeks to reach a stipulation with them that would avoid the need for this very litigation over the need for preliminary injunctive relief.

On March 17, 2020, Plaintiff's counsel proposed that the parties enter into a stipulation during the pendency of the litigation on the merits, pursuant to which the District would agree to (1) suspend any further enforcement against A.K of the school policies at issue for engaging in the form of speech giving rise to this action, (2) purge from or seal its school files the information reflecting A.K. allegedly violated and was disciplined for violating those policies, and (3) not release any information regarding the same in response to any requests for information or records about A.K. from any higher education institutions. Decl. of Raymond M. DiGuiseppe ("RMD") ¶ 4.

Counsel explained that A.K. was seeking such a stipulation to avoid the need for a separate round of litigation over a temporary restraining order and preliminary injunction. *Id.* Counsel for Defendants indicated that the District likely would not be inclined to enter into any such stipulation but that they would confer with their clients and respond sometime later. Decl. of RMD ¶ 4. There was no response until three weeks later, on April 7th, when Defendants' counsel responded via email saying that, after having conferred with their clients, the District was "not inclined to enter into a nonenforcement or nondisclosure agreement at this time." Counsel also implied that Plaintiff faced little or no risk of future discipline for the form of speech activities

of concern because the District would be continuing with remote learning for the remainder of the 2019-2020 school year due to the COVID-19 crisis. *Id*. at ¶ 5.

Because the response of Defendants' counsel did not entirely foreclose the possibility of the parties' reaching such stipulation to avoid the need for a separate round of litigation, Plaintiff's counsel reached out again, on April 17th. Counsel requested again that the District agree to enter into a stipulation that would avoid the need to seek preliminary injunctive relief, explaining that the transition to an online school platform "doesn't neutralize the existence of an ongoing infringement upon A.K.'s free speech rights, just the same as it does not eliminate the risks of further enforcement of school policies, further discipline, further tarnishing of her school records, and further jeopardizing of her higher educational opportunities, for engaging in the same or similar speech activities." Decl. of RMD ¶ 6.

Plaintiff's counsel further expressed concern at this time about how the District's unwillingness to enter into such an agreement "necessarily implies that the school fully intends to reserve these powers and to enforce them for the very purpose of imposing further discipline for any conduct of the same kind." Decl. of RMD ¶ 6. For that reason, counsel pressed the District for its cooperation in establishing a stipulation that would avoid the need for further litigation, specifically stating: "the plaintiffs intend to proceed with the filing of a motion for a preliminary injunction, unless the defendants specifically agree to suspend any further enforcement actions against A.K. for engaging in the form of speech that gave rise to this action – i.e.,

3

posting on social media platforms images or pictures that display a firearm without any explicit or implicit threat made to anyone, such as the SnapChat post at issue in this case which not only contained no such threat but clearly *eliminated* the existence of any reasonably conceivable threat through the accompanying message that the firearms displayed were being taken to a *gun range* for the purpose '*practic[ing] gun safety and responsible gun ownership*' – and further agree to purge or seal the records of the prior discipline or at least not to release any information regarding this disciplinary action in response to any requests for information or records about A.K. from any higher education institutions." Decl. of RMD at ¶ 7.

Three days later, on April 20th, Defendants' counsel responded, declining the request, saying it appeared that A.K. was seeking "carte blanche to post anything, and there is no authority for an order in this Circuit that would bar the District from disciplining a student for any kind of off-campus speech whatsoever." Decl. of RMD at ¶ 8. The next day, April 21st, the parties conducted their Rule 26(f) conference. During that conference, Plaintiff's counsel again suggested the District reconsider its position to avoid the need for further litigation, emphasizing that A.K. was not seeking "carte blanche to post anything," but simply an agreement from the District not to take further disciplinary actions against A.K. for engaging in the form of speech activities specifically at issue in this case, as previously described in particularity. *Id.* at ¶ 9. Plaintiff's counsel further noted how the previous statement of Defendants' counsel about the power of the District to discipline a student for "off-campus speech"

4

showed that the District indeed intended to reserve and assert such authority over A.K.'s speech activities during this period of online school. *Id.*

Defendants' counsel said they would further confer about the proposal but to assume the District's position remained the same unless they advised Plaintiff's counsel otherwise. Decl. of RMD at ¶ 9. As of the date the motion for temporary restraining order and preliminary injunction was filed on April 30, 2020, Plaintiff's counsel had received no further word from Defendants' counsel indicating any change in their position as to the proposed stipulation or any alternative proposal. *Id.* at 10.

Thus, no fair or legitimate basis exists to lambaste Plaintiff as Defendants now do for supposedly sitting around doing nothing "for two and a half months after filing this lawsuit" and then suddenly crying foul in feigned urgency. Resp. at 1, 5. Nor can Plaintiff be painted as having just "waited over ***six months*** after her alleged injury to seek emergency relief" to file this action. *Id.* at 4 (emphasis original). She did not just sit around and needlessly "wait." Instead, Plaintiff's mother contacted Plaintiff's counsel within little more than two weeks after the suspension, on October 28, 2019, specifically seeking representation and advice in the situation. Decl. of A. Kraut ¶ 2. Plaintiff's counsel undertook investigation and research into the facts and potential claims, and made efforts to line up local counsel to assist with initiating legal action, all in due course. *Id.* at ¶¶ 3-4. After all these efforts, it became clear that the only workable arrangement for proceeding would involve Plaintiff's direct engagement of FPC Law. *Id.* at ¶ 5. She did so on February 12th, and the complaint

5

was filed forthwith just two days later. *Id.* Of course, Plaintiff was entirely reasonable and, as a layperson and high school student, had no choice but to rely upon the efforts of legal counsel all along the way to investigate, develop, and initiate legal action as soon as practicable under the circumstances. Certainly, there was *no* form of delay that could fairly be characterized as dispelling the existence of the urgency underlying her claims or the need for the relief she seeks through this action.

Indeed, just as they implied in their previous communications with Plaintiff's counsel who were trying to seek a stipulation that would avoid this further litigation, Defendants' arguments in opposition to a restraining order indicate they fully reserve and stand ready assert their perceived disciplinary powers against A.K. based on the very same sort of conduct that gave rise to this action. Resp. at 8 (emphasizing the District "must be permitted to reasonably enforce its discipline policies" in arguing that the "public interest" weighs against enjoining such enforcement against A.K.); *id.* 10 ("It also is well established that schools can regulate off campus speech …").

Defendants actually take the alarming position that Plaintiff must wait until *after* she has been subject to discipline *again* to seek any such relief. Resp. at 5 ("Again, the time to seek emergency relief would be after A.K. has posted something else and the District begins a disciplinary response.") And they similarly declare that she must wait until *after* a college has requested her school files to seek any nondisclosure injunctive relief, forcing her to tie up her college admission process for weeks or months – almost certainly well beyond the point at which an admissions

6

decision would need to be made and the school year would commence – while the questions about the release of her records are duked out in court. Obviously, allowing Defendants to erect any such hurdles would entirely defeat the purpose of permitting parties to seek and obtain preliminary injunctive relief against continuing harms. And let's make no mistake – the harm is *continuing* as Defendants' own ardently pursued claims of *continuing* power and authority over Plaintiff make plain as day.

Moreover, Defendants' handling of the merits of A.K.'s claim is suspect. For example, their reliance on *People in Interest of K.P.*, 514 P.2d 1131 (Colo. 1973) is misplaced. In *K.P.* there is no mention of the First Amendment as the statute wasn't challenged in that context. Under the First Amendment, the vagueness doctrine and overbreadth doctrines are more demanding. *See Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 845 (1997) (Lack of notice in a law "raise special First Amendment concerns because of its obvious chilling effect on free speech."); *Baggett v. Bullitt,* 377 U.S. 360, 372, (1964) (Vague laws force potential speakers to "'steer far wider of the unlawful zone' … than if the boundaries of the forbidden areas were clearly marked.") (internal citations omitted); and *United States v. Stevens*, 559 U.S. 460 (2010) ("In the First Amendment context, however, this Court recognizes 'a second type of facial challenge,' whereby a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'") (internal citations omitted). Additionally, Defendants tellingly cite to facts that were never mentioned as part of the disciplinary proceedings. For

instance, Defendants point to the presence of a confederate flag in the background of the photograph at issue, when the District itself never mentioned that as part of the reasons for the discipline. It is apparent Defendants are grasping for straws in addressing the merits of the claim.

For these reasons, and those put forth in the underlying motion, Plaintiff respectfully prays for a temporary restraining order and preliminary injunctive relief that she has had no choice but to seek from this Court after her good faith efforts to avoid the need for taking such further action in protection of her civil rights.

Dated: May 5, 2020

Respectfully Submitted,

/s/ Eugene Volokh
385 Charles E. Young Dr. E.
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

/s/ Raymond M. DiGuiseppe
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road
Suite 300
Southport, NC 28461
(910) 713-8804
law.rmd@gmail.com

/s/ Adam Kraut
Adam Kraut, Esq.
Firearms Policy Coalition
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 476-2342
akraut@fpclaw.org

Attorneys for Plaintiff